IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DKNP, LLC, d/b/a | ) | |
| ET CETERA HOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-686-JHP |
| | ) | |
| GMRI, INC. d/b/a | ) | |
| THE OLIVE GARDEN, | ) | |
| | ) | |
| Defendant, | ) | |
| Third Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UTICA SQUARE SHOPPING | ) | |
| CENTER, INC. | ) | |
| | ) | |
| Third Party Defendant, | ) | |

## ORDER AND OPINION

Before the Court are Hartford Casualty Insurance Company's ("Hartford") Motion to Intervene [Docket No. 17], Hartford's Supplement to Its Motion to Intervene [Docket No. 21], Hartford's Supplemental Brief [Docket No. 55], Plaintiff DKNP, LLC's ("DKNP") Objection and Response to Hartford's Motion to Intervene and Supplement to Its Motion to Intervene [Docket No. 25], Hartford's Reply to DKNP's Objection to Hartford's Motion to Intervene [Docket No. 26], DKNP's Supplemental Response in Opposition to Hartford's Motion to Intervene and Supplement to Its Motion to Intervene [Docket No. 57], and Third Party Defendant Utica Square Shopping Center's Response in Opposition to Hartford's Motion to Intervene [Docket No. 58].

**Background**

Plaintiff DKNP and Defendant GMRI, Inc. ("GMRI") are adjacent lessees in the Utica Square Shopping Center in Tulsa, Oklahoma. According to DKNP, since taking up residence in Utica Square, DKNP has experienced periodic flooding of its premises. In particular, on March 18, 2006, DKNP's owners discovered significant flooding on the first floor of their store, which the owners traced to a leak in the ceiling of DKNP's stock room. DKNP asserts that a subsequent investigation identified a faulty pressure release valve on GMRI's hot water heater as the source of the flooding, which damaged DKNP's premises and inventory. As a result of the water damage, DKNP filed claims with Hartford, its insurer. According to Hartford, to date it has paid DKNP $58,270.47 on DKNP's claims.

On September 13, 2006, DKNP filed this action for monetary damages and injunctive relief against GMRI in the District Court of Tulsa County, seeking an abatement of the nuisance allegedly created by GMRI. On the same day, DKNP also filed an action against Hartford, alleging that Hartford's failure to pay DKNP's claims under its insurance policy in a timely manner constituted a breach of both Hartford's contractual relationship with DKNP and its duty of good faith and fair dealing with its insured. Although both actions were initially removed to this Court pursuant to 28 U.S.C. § 1441, the Court remanded the latter action to state court based upon Hartford's failure to set forth sufficient underlying facts establishing the requisite amount in controversy required for subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).

On April 4, 2007, counsel for Hartford first learned of the action against GMRI pending before this Court. Accordingly, on April 23, 2007, Hartford filed the instant motion to intervene. In its motion, Hartford asserts that its partial payment of DKNP's claims gives Hartford a subrogation

2

interest in DKNP's action against GMRI. Because DKNP is still pursuing its breach of contract and bad faith action against Hartford in state court, Hartford insists that DKNP cannot adequately represent Hartford's interest in the present action. As a result of its subrogation interest in any recovery DKNP may receive against GMRI, as well as its asserted rights "to defend its interests regarding its dispute with [DKNP] regarding the amount of alleged damages that were caused by the water loss at issue...[and] to protect against inconsistent obligations" (Hartford's Mot. at 4), Hartford seeks "leave to intervene as a party [p]laintiff to assert its subrogation claim against [GMRI] yet also defend the claims of breach of contract, fraud and bad faith asserted against it by [DKNP]" (*Id.* at 11).

## Discussion

Although neither DKNP nor Utica Square has raised the issue in objecting to Hartford's Motion, the Court *sua sponte* raises the issue of subject matter jurisdiction. Specifically, the Court is concerned that even if it were to allow Hartford to intervene pursuant to Fed. R. Civ. P. 24, the Court would not have subject matter jurisdiction over Hartford's claims. Rule 24 does not, and cannot, create jurisdiction where no jurisdiction exists. *See* Fed. R. Civ. P. 82. Therefore, any examination of the applicability of Rule 24 must be prefaced by a determination of the existence of subject matter jurisdiction over the claims which the Rule 24 intervenor wishes to assert.

In order to properly analyze the issue of jurisdiction, it is necessary to first identify the claim or claims upon which jurisdiction might be based. In its Reply, Hartford correctly recognizes that the claim relevant to the Court's jurisdictional analysis is the subrogation claim it wishes to bring

against GMRI[1]. (Hartford's Reply at 3.) Hartford also correctly recognizes that the breach of contract, fraud and bad faith claims do not become relevant until the Court has asserted jurisdiction over the subrogation claim (*Id.*) The Court recognizes that, procedurally, Hartford is asking the Court to allow it intervene as a plaintiff to assert a subrogation claim against GMRI.  Then, once the Court has asserted jurisdiction over the subrogation claim, Hartford asks the Court to exercise supplemental jurisdiction over the state law breach of contract, fraud, and bad faith claims. This second request on the part of Hartford is predicated on the Court's exercising of jurisdiction over the subrogation claim. The Court therefore focuses its subject matter jurisdiction analysis on the subrogation claim Hartford wishes to assert against GMRI as a plaintiff intervenor.

**A. Hartford's Subrogation Claim**

In its motion, Hartford asserts that it possesses a direct and substantial subrogation interest in DKNP's damage claim against GMRI. Oklahoma law recognizes two forms of subrogation: conventional and equitable. *U.S. Fidelity and Guar. Co. v. Federated Rural Elec. Ins. Corp.*, 37 P.3d 828, 831 (Okla. 2001). "Conventional subrogation is created by an agreement or contract between parties granting the right to pursue reimbursement from a third party in exchange for payment of a loss." *Id*. In contrast, "equitable subrogation...does not depend upon contract but arises by implication in equity to prevent an injustice...where one person who is not a mere volunteer...pays a debt for which another is primarily answerable." *Id*. "In th[e] insurance context, a claim based on equitable subrogation allows an insurer who has paid coverage to stand in the shoes of the insured

---

[1]  This characterization of Hartford's position is based upon the following statement made in Hartford's Reply: "[t]he Court *must first exercise jurisdiction* by permitting Hartford to intervene. Once Hartford has been made a party, *then* procedural management begins and the issues pending in the state court can be consolidated with the present litigation." (Hartford's Reply at 3.) (emphasis added).

and pursue recovery from a third party primarily responsible for the insured's loss which the insurer both insured and reimbursed." *Id.*

Hartford's claim is this, having paid DKNP $58,270.47 on an insurance claim arising out of the alleged tortious conduct of GMRI, Hartford wishes to assert a subrogation claim against GMRI to recover that $58,270.47. Having only paid DKNP $58,270.47[2], Hartford cannot possibly assert a subrogation claim for a greater amount, as a subrogation claim is simply a means of pursuing reimbursment.

**B. Jurisdiction Under 28 U.S.C. § 1332**

Independent subject matter jurisdiction over the subrogation claim that Hartford wishes to bring must either be based in 28 U.S.C. § 1331's grant of federal question jurisdiction or 28 U.S.C. § 1332's grant of diversity jurisdiction. The subrogation claim is clearly not a federal question, so independent subject matter jurisdiction, if present, must lie under § 1332.

28 U.S.C. § 1332 gives federal courts the power to hear state law claims so long as two requirements are met: 1) the parties are completely diverse; and 2) the amount in controversy exceeds $75,000. In the present case, while Hartford and GMRI are diverse parties, the subrogation claim that Hartford wishes to assert against GMRI is clearly for an amount less than the required $75,000.

Therefore, there is no independent basis on which this Court can exercise subject matter

---

[2]The Court should note that Hartford has taken the position that $58,270.47 is the sum total of the damages owed by GMRI (Hartford's Mot. ¶6 at 2.) ("Based upon the amount of payment of insurance proceeds, Hartford contends it has the greater interest in the controversy between Plaintiff, DKNP, and Defendant, Olive Garden, since it has paid all damages it believes are due and owing from the water loss at issue").

jurisdiction over the subrogation claim Hartford wishes to bring against GMRI.

**C. Jurisdiction Under 28 U.S.C. § 1367**

Such an independent basis for subject matter jurisdiction does not always have to exist, however. The supplemental jurisdiction statute, 28 U.S.C. § 1367, allows federal courts in some cases to exercise jurisdiction over claims that do not have an independent jurisdictional basis:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a). At first blush, the final line of § 1367(a) seems applicable to the instant case, but that line must be read together with § 1367(b) which qualifies § 1367(a)'s broad grant of supplemental jurisdiction:

> In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

28 U.S.C. § 1367(b). Section 1367(b) thus makes it clear that when a person seeks to intervene as a plaintiff into a diversity based case, supplemental jurisdiction over the intervenor's claim does not exist where such jurisdiction would be inconsistent with § 1332's requirements.

In the present case, Hartford wishes to intervene in the pending case involving DKNP's claims against GMRI. This Court's subject matter jurisdiction over that case is diversity based. Therefore, § 1367(b) is implicated. Once implicated, § 1367(b)'s plain language prevents this Court

from exercising subject matter jurisdiction over Hartford's $58,270.47 claim. Exercising supplemental jurisdiction over what would be an otherwise jurisdictionally deficient subrogation claim is not "[c]onsistent with the jurisdictional requirements of section 1332." *See* 28 U.S.C. § 1367(b).

The Court recognizes that prior to Congress' 1990 enactment of 28 U.S.C. § 1367, jurisdiction in this situation would have been proper. Pre-1990 caselaw drew a distinction between permissive intervenors and intervenors of right. Permissive intervenors were required to have an independent basis for federal jurisdiction, while intervenor of right were not. *See e.g. Smith Petroleum Service, Inc. v. Monsanto Chemical Co.,* 420 F.2d 1103 (5th Cir. 1970). This pre-1990 rule resulted in one of the most commented on curiosities of procedural law: if a party were deemed necessary under Rule 19 the party had to independently satisfy § 1332, if that same party intervened as a matter of right under Rule 24, it did not. While many commentators assumed that Congress would put an end to that anomaly by granting supplemental jurisdiction in both instances, § 1367 resolved the anomaly the other way, and *denied* supplemental jurisdiction in both instances. 13 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3523 (2d. ed. 2007).

The Supreme Court has also recognized the impact of § 1367(b) on claims brought by Rule 24 intervening plaintiffs. In *Exxon Mobil Corp. v. Allapattah Services, Inc.*, the Supreme Court examined whether claims brought by plaintiffs permissively joined under Rule 20 must independently satisfy § 1332's requirements before supplemental jurisdiction can be exercised. 545 U.S. 546, 560 (2005). The Supreme Court held that so long as the joined plaintiffs did not destroy complete diversity, their claims could be heard even if the claims were for less than the required $75,000. In so holding, the Supreme Court noted that had the case involved Rule 24, the outcome

7

would have been different:

> Section 1367(b), which applies only to diversity cases, withholds supplemental jurisdiction over the claims of plaintiffs proposed to be joined as indispensable parties under Federal Rule of Civil Procedure 19, or who seek to intervene pursuant to Rule 24. Nothing in the text of § 1367(b), however, withholds supplemental jurisdiction over the claims of plaintiffs permissively joined under Rule 20[.]

*Id.* That statement was the Supreme Court's recognition that while certain types of otherwise jurisdictionally deficient claims can be heard under § 1367's grant of supplemental jurisdiction, those brought by Rule 24 intervening plaintiffs must satisfy § 1332's complete diversity *and* amount in controversy requirements. *Allapattah* makes it clear that the pre-1990 rule requiring intervenors of right to show no independent grounds for federal jurisdiction cannot, and did not, survive § 1367's enactment.

Accordingly, the Court finds that it lacks subject matter jurisdiction over the subrogation claim that Hartford wishes to assert against GMRI as a plaintiff intervenor. Because the Court has found no basis on which it may assert subject matter jurisdiction over the subrogation claim, the Court does not address the breach of contract, fraud, and bad faith claims brought by DKNP against Hartford. Instead, the Court finds that the procedural case management concerns relied upon by Hartford as the basis for its seeking to defend those claims in the present action are rendered moot by the Court's finding that it cannot join Hartford as a plaintiff intervenor.

## Conclusion

For the reasons set forth above, Hartford Casualty Insurance Company's Motion to Intervene (Docket No. 17) is DENIED.

IT IS SO ORDERED.

James H. Payne
United States District Judge
Northern District of Oklahoma